**RANDAL B. BROWN, WSBA No. 24181**
25913 - 163rd Avenue S.E.
Covington, WA  98042
Telephone: (253) 630-0794
Email: brownees2@msn.com
Attorney for Plaintiffs

**AARON L. LOWE, WSBA No. 15120**
1403 W. Broadway Avenue
Spokane, WA 99201
Telephone: (509) 323-9000
Email: aaronllowe@yahoo.com
Attorney for Plaintiffs

**ROBERT E. KOVACEVICH, WSBA No. 2723**
818 West Riverside Avenue, Suite 525
Spokane, WA  99201-1914
Telephone: (509) 747-2104
Email: kovacevichrobert@qwestoffice.net
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| ROBERT REGINALD COMENOUT SR., EDWARD AMOS COMENOUT III, THE ESTATE OF EDWARD AMOS COMENOUT JR., BY SPECIAL ADMINISTRATOR ROBERT E. KOVACEVICH, ROBERT REGINALD COMENOUT JR., MARLENE COMENOUT, and LEE A. COMENOUT SR.,<br><br>Plaintiffs,<br><br>v.<br><br>THE SUPERIOR COURT OF THE STATE OF WASHINGTON, COUNTY OF PIERCE, BOYD GOODPASTER, Employee of the Washington State Liquor and Cannabis Control Board, ATF Task Force Officer, J. MARK KELLER, ATF Task Force Officer, LEE BOLING, THE STATE OF | No.<br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIONS; FOR DECLARATORY RELIEF ADJUDICATING FEDERAL OBSTACLE PREEMPTION OF WASH.REV.CODE 64.20.030 AND TO APPLY FEDERAL PREEMPTION TO OWNERSHIP AND OTHER ACTIVITIES OF PLAINTIFFS ON THE INDIAN COUNTRY ALLOTMENT AT PUYALLUP, WASHINGTON |

Complaint for Preliminary and
Permanent Injunction, etc. - 1

1

2   WASHINGTON LIQUOR AND         )
    CANNABIS CONTROL BOARD, a     )
3   Division of the State of      )
    Washington, and THE STATE OF  )
4   WASHINGTON DEPARTMENT OF      )
    REVENUE, a division of the State )
5   of Washington, JOSHUA CHOATE  )
6   and MICHAEL PELLICCIOTTI,     )
    Assistant Attorney Generals,  )
7   Criminal Justice Division,    )
    JUDGES JOHN AND JANE DOE,     )
8   1 THROUGH 10, who are now     )
9   presiding or who will preside in )
    the future against Plaintiffs )
10  ROBERT REGINALD COMENOUT      )
11  SR., ROBERT REGINALD          )
    COMENOUT JR., MARLENE         )
12  COMENOUT and LEE              )
    COMENOUT SR. in current cases )
13  in state courts now or future )
14  cases involving Plaintiffs'   )
    allotment activity of Plaintiffs or )
15  some of them for alleged failure to )
16  collect tax or obey state tax laws, )
    on the basis that state jurisdiction )
17  is preempted by federal law; JOHN )
18  AND JANE DOES, 1-10, fictitious )
    names of employees of the     )
19  Washington State Liquor and   )
20  Cannabis Board who participated )
    in raids on Plaintiffs' allotment )
21  and property at 908/920 River )
22  Road, Puyallup, Washington, or )
    who may participate in the future, )
23                                )
24           Defendants.          )
                                  )

25

26       Plaintiffs, through counsel, complain and allege for relief against

27  Defendants as follows:

28

    Complaint for Preliminary and
    Permanent Injunction, etc. - 2

# I.  BACKGROUND

The location of all activity alleged in this Complaint is Public Domain Allotment 130-1027, at 908/920 River Road, Puyallup, Washington, 98371. It is legally classified as Indian Country pursuant to 18 U.S.C. § 1151(c).

As early as 1743, the English and American courts have rejected state or colonial attempts to tax Indians.  History proves that the Constitutional Convention approved James Madison's determination to commit the exclusive power over Indian affairs to the federal government.

Territorial Governor Isaac I. Stevens made six treaties with the Northwest Indians in 1854-5.  They are:

> Treaty of Medicine Creek, 10 Stat. 1132 (Dec. 26, 1854); Treaty of Point Elliot, 12 Stat. 927 (Jan. 22, 1855); Treaty of Point No Point, 12 Stat. 933 (Jan. 26 1855); Treaty of Neah Bay, 12 Stat. 939 (Jan. 31, 1855); Treaty with the Yakamas, 12 Stat. 951 (June 9, 1855); Treaty of Olympia, 12 Stat. 971 (July 1, 1855).

Affected Indians included the Quinault and Yakama Indians.  The purpose of the treaties was to extinguish Indian titles.  Even after the treaties, treaty Indians were hanged and their heads were cut off and sent to Olympia, "Where a price was to be paid."  The intervening 160 years has improved the method.  The state of Washington Liquor and Cannabis Control Board has updated the effort by raiding the Comenouts, keeping their money and property, and thereby obtaining rewards in the form of bonuses.  The State has asserted jurisdiction in an attempt to force Plaintiffs to collect its cigarette taxes.  It is undisputed that the State cannot tax the Indians nor

can it require the Indians to pay or collect tax on any sales of non cigarette tobacco products.  The non Indian purchaser is the person who is supposed to pay the cigarette tax.  The legal fiction that the consumer pays the tax is a practical unreality for the reason that minimum rolls of tax stamps cost $30,000 and are supposed to be glued to individual packages by wholesalers. The federal law of transporting cigarettes cannot be civilly applied to Indians. 18 U.S.C. § 2346(b)(1), (2).  The effect is that a direct state tax burden is imposed on the Plaintiffs.  Current law holds that Indians are not required to collect the cigarette tax.  The State has gone onto the allotment to seize, arrest and take the Plaintiffs' personal property and money.  Regardless of tax, this incursion on federal property is illegal.

The preemption analysis in Indian law cases is different from standards of preemption developed in other areas of the law.  Each case "requires a particularized examination of the relevant state, federal and tribal interests."  *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 176, 109 S.Ct. 1698, 104 L.Ed.2d 209 (1989).  Here, the interests are clear.  Congress wanted to assimilate Indians into mainstream society.  *Cohen's Handbook of Federal Indian Law,* § 16.03[2][a], page 1072 (Nell Jessup Newton ed. 2012). Congress did not want states to tax or regulate the allottee Indian until he/she was assimilated into mainstream society.  When able to manage his/her affairs, the BIA removed the restrictions. 25 U.S.C. §§ 349, 465.  The restrictions on allotment 130-1027 are still in place.  The allotment is part

Complaint for Preliminary and
Permanent Injunction, etc. - 4

of the definition of Indian Country, 18 U.S.C. § 1151(c).   *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 215 n. 17, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) observes "[T]he federal tradition of Indian immunity from state taxation is very strong and. . .the state interest in taxation is correspondingly weak."   Unsurprisingly, Washington State has been historically branded as an enemy of the Northwest Indians.

This Complaint seeks to put an end to the ravaging of the Comenouts who seek to accomplish what the federal government wanted them to accomplish; assimilation within mainstream society.   This case seeks declarations and injunctions to establish exclusive federal jurisdiction that would eliminate the state as an enemy of the Plaintiffs.

Congress has exclusive jurisdiction to govern Indian owner activity on Indian-owned restricted allotments.   State and local taxation is prohibited. Federal statutes, state and federal constitutions and federal binding case law prohibit state employees or agents from issuing state search warrants to arrest Indian owners and other Indians working on allotments.   This method, including seizures of goods and money, is beyond state court jurisdiction and must be enjoined by this Court by declaring federal preemption.

### Rulings Requested

This Complaint seeks the following rulings, including Declaratory and Injunctive Relief.

1.      Confirming that the allotment is properly defined under 18 U.S.C. § 1151(c).

2.      Declaring that Wash.Rev.Code § 64.20.030, attempting to eliminate federal restrictions, is void by federal obstacle preemption pursuant to 25 U.S.C. §§ 348, 349.

3.      A declaration that the state of Washington courts are without jurisdiction to issue search warrants to arrest Plaintiffs for alleged violations of Wash.Rev.Code, Ch. 82.24, or to seize cigarettes in possession of Plaintiffs on their allotted land, Public Domain Allotment No. 130-1027. *Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir. 1990).

4.      Declaring that the state of Washington cigarette tax, Ch. 82.24, by virtue of Wash.Rev.Code § 82.24.900, when used to collect state cigarette tax from the Comenouts, is preempted by federal and state constitutions and federal law.  Therefore, Plaintiffs, when engaged in business on the allotted land are not required to collect Washington State cigarette taxes from non Indian purchasers and are protected against arrest and seizure of their property.

5.      Declaring that Plaintiffs, as enrolled Indians, may possess commercial cigarette packages without Washington State cigarette tax stamps on them and that Plaintiffs may place their own stamps on the packages.  WAC 458-20-186(b)(i).

6.      That Wash.Rev.Code § 82.24.250(1)(7)(b)(c) and (d); § 82.24.290

and WAC 458-20-186(502, 802 and 803) and WAC 458-20-192(9)(i)(ii) and (iii) are invalid or not applicable to Plaintiffs. These statutes and administrative regulations allow tax free and tax stamp free sales of cigarettes sold by military concessionaires, but apply notice and more onerous conditions to sales of cigarettes by Indians in Indian Country, thereby violating equal protection constitutional requirements and are void.

7.     A declaration that the state of Washington has no authority to assign Assistant Attorney Generals Joshua Choate and Michael Pellicciotti to prosecute affected Plaintiffs for alleged state tax crimes on the allotment. The State attorneys have no jurisdiction to criminally charge Plaintiffs where the State lacks state jurisdiction.

8.     That *State v. Comenout,* 173 Wash.2d 235, 267 P.3d 355 (Wash. 2011) and similar cases are wrongly decided on the issue of state jurisdiction of off-reservation Indian allotments; and especially Public Domain Allotment No. 130-1027.  That the state cases are not binding on this Court, violate existing law and are superceded by prospective changes in the state law, Wash.Rev.Code §§ 37.12.160-180, and federal preemption of state cases involving enrolled Indians in Indian Country.

9.     That Defendants, state of Washington, its divisions Washington State Liquor and Cannabis Control Board and Department of Revenue, its named Defendants J. Mark Keller, Lee Boling and Boyd Goodpaster and any employee or agent of the state, or who now work in concert with the named

Complaint for Preliminary and
Permanent Injunction, etc. - 7

Defendants, cannot go upon Allotment No. 130-1027 to arrest or regulate Plaintiffs' convenience store activity. That the said Defendants have no jurisdiction to apply state laws including state tax laws to Plaintiffs' activity on the allotment.

10.   Edward A. Comenout Jr.'s estate is also seeking the market value of 376,852 packs of cigarettes seized by the Washington State Liquor Control Board on July 28, 2008. The Pierce County Case No. 14-2-09107-4 is on appeal in Division II of the Washington State Court of Appeals, No. 47883-8-II. Oral arguments took place on April 20, 2016. The case is awaiting decision. The estate seeks dismissal of the case for lack of jurisdiction and return of the property or its value.

11.   Pursuant to the theory of cases like *United Keetoowah Band of Cherokee Indians v. State of Oklahoma,* 927 F.2d 1170, 1182 (10th Cir. 1991); *Crowe and Dunlevy v. Stidham,* 640 F.3d 1140, 1157 (10th Cir. 2011); *Boisclair v. Superior Court of San Diego County,* 801 P.2d 305, 315 (S.C. Cal. 1990); *Foster v. State Dept. of Transportation,* 34 P.3d 1288, 1289 (Alaska 2001); *Magnan v. Trammell,* 719 F.3d 1159 (10th Cir. 2013); and federal statutes 25 U.S.C. §§ 349, 348, 465; other sections of Chapter 9, Title 25 U.S.Code apply federal laws governing allotments; and 18 U.S.C. 1151(c), a section adopted by the state cigarette tax law, Wash.Rev.Code § 82.24.010(6) an injunction is requested to prohibit state of Washington judges from proceeding on current existing cases and future cases against Plaintiffs for

activity carrying on at the convenience store business on the allotment.

12.     Plaintiffs seek a declaration that they may live and work on the property in cooperation with city, county and state governments, but seek clarification that these governments lack jurisdiction over them on their land in the same or similar manner as these governments lack jurisdiction over the nearby Puyallup Indian Reservation, the U.S. military bases or U.S. national banks located in Pierce County, Washington.

13.     That the restrictions in the deed of the allotment owners have never been eliminated and are still intact until the Bureau of Indian Affairs certifies that Plaintiffs Robert R. Comenout Sr. and Edward Amos Comenout III are competent to handle their respective affairs.  25 U.S.C. §§ 348, 349, 465.

14.     Plaintiffs seek a declaration to establish that the Spokane probate of Plaintiff Edward A. Comenout Jr. owns the buildings on the allotment and that the revenue from the building is free of any state tax by virtue of federal preemption.

15.     To obtain a declaration that since the laws of the state of Washington, Wash.Rev.Code §§ 69.51A.010, 030, 040, 043, 045, 060, 085, 100, 260, 270, 296, 300; Ch. 69.52 and other such enactments now allow use and sale of cannabis in the state, the case of *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 210, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987) allows the sale of cannabis and hemp products as the public policy of the

state is to allow the activity. The Plaintiffs seek a declaration that the same conduct, as now allowed for cannabis commerce in the state, is allowable for Plaintiffs to carry on the same commerce at the allotment and is also beyond the state's taxing authority.

16. To obtain additional declarations related to or adjunct to the above requests and to enter temporary or permanent injunctions, or both, prohibiting Defendants from the present or future enforcement of the issues determined by Declaratory Judgment.

## II. JURISDICTION

17. Co-Plaintiffs Robert Reginald Comenout Sr. and Edward Amos Comenout III have jurisdiction in this Court as allotment owners pursuant to 25 U.S.C. § 345 and 28 U.S.C. § 1353.

18. The Estate of Edward Amos Comenout Jr. has property located in allotment buildings. Jurisdiction is conferred by the Estate's building ownership, pursuant to 28 U.S.C. § 1353, 25 U.S.C. § 345 and § 1331. *Forest County Potawatomi Community of Wisconsin v. Norquist,* 45 F.3d 1079 (7th Cir. 1995), "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Id.* at 1082 (internal quotes omitted). 28 U.S.C. 1331 applies.

19. The action is commenced and arises under the Constitution of the United States, Article 1, § 8, cl. 3; Article VI, cl. 2, the Fifth and Fourth Amendments and federal question jurisdiction under 28 U.S.C. § 1331. As

Complaint for Preliminary and
Permanent Injunction, etc. - 10

owners of fractional rights as allottees, granted by *Babbitt v. Youpee*, 519 U.S. 234, 117 S.Ct. 727, 136 L.Ed.2d 696 (1997) to "not diminish the owner's right to use or enjoy property during his lifetime." *Id.* at 245. The presence of the employees and agents on the property is a federal common law trespass governed by federal law conferring jurisdiction under 25 U.S.C. § 345. *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1282 (10th Cir. 2010).

20. Declaratory relief is sought pursuant to 28 U.S.C. §§ 2201-2202. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908); *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007).

21. This case is commenced pursuant to U.S. Const. art. VI, cl. 2, wherein federal law can preempt state law and also the Equal Protection clause of the Fifth Amendment and the Indian Commerce Clause, Article 1, § 8, cl. 3. The court has jurisdiction pursuant to 28 U.S.C. §§ 1651, 1353 and 1331. *United Keetoowah Band of Cherokee Indians v. State of Oklahoma ex rel Moss,* 927 F.2d 1170, 1179 (10th Cir. 1991); *Ex Parte Young,* 209 U.S. 123 (1908); *State v. Gohl,* 477 N.W.2d 205, 206 (S.C.N.D. 1991); *Chick Kam Choo v. Exxon Corporation,* 486 U.S. 140, 151, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *Shaw v. Delta Airlines,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Armstrong v. Maple Leaf Apartments,* 508 F.2d 518, 523-4 (10th Cir. 1974); 28 U.S.C. § 2283, 26 U.S.C. § 1341; *Sycuan Band of Mission Indians v. Roache,* 54 F.3d 535, 541 (9th Cir. 1994). The Anti Tax Injunction Act does not apply for the reason that it is undisputed that

Complaint for Preliminary and
Permanent Injunction, etc. - 11

Indians are not liable for the state cigarette taxes. Only collection on sales to non Indians is disputed. *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 480, 96 S.Ct. 1634, 48 L.Ed. 96 (1976); *Confederated Tribe of the Yakama Reservation v. Gregoire,* 658 F.3d 1078, 1089 (9th Cir. 2011). *Direct Marketing Ass'n v. Brohl,* ___ U.S. ___, 135 S.Ct. 1124, 1134, 191 L.Ed.2d 97 (2015) prohibits application of the Anti Tax Injunction Act to notice reporting or tax collection. The declaratory relief is sought by Plaintiffs, except Edward Amos Comenout III, to dismiss the ongoing state prosecutions. Edward Amos Comenout III seeks an injunction against future enforcement by the defendants of state tax laws against the Indian allotment owners.

22.    In addition to Preliminary and Permanent Injunctions, Plaintiffs also seek a declaration to establish the extent, if any, of city of Puyallup, County of Pierce, state of Washington, Quinault Tribe, Bureau of Indian Affairs and Alcohol and Tobacco agencies have jurisdiction over Plaintiffs' occupancy and activity as American Indian owners on the site.

### III.  VENUE

23.    Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b) and (c) as some of the Defendants reside in Pierce County and the events occur and have incurred on the property located in Pierce County, Washington. The land is within the Western District. 28 U.S.C. § 128(b).

Complaint for Preliminary and
Permanent Injunction, etc. - 12

## IV.  PARTIES PLAINTIFF

24.     Co-Plaintiffs, Robert Reginald Comenout Sr. and Edward Amos Comenout III, are enrolled Indians, joint owners of the allotment, and residents of the state of Washington.  They personally reside at the property location, 908½ River Road, Puyallup, Washington 98371.  Their residence is within the Western District of Washington.  Edward Amos Comenout Jr. also owned a single-wide trailer, licensed vehicles and other personal property located on the land.  Edward Amos Comenout Jr. was domiciled and living on the property at the time of his death.

25.     Another Co-Plaintiff is the Estate of Edward Amos Comenout Jr., Spokane County Superior Court, Washington, Case No. 10-4-01216-0.  The Spokane County probate owns a majority interest in the permanent building on the allotment.   The agent for service for said probate is Robert E. Kovacevich, 818 West Riverside Avenue, Suite 525, Spokane, Washington 99201-0995.  Edward Amos Comenout Jr. died June 4, 2010.  He was an enrolled Quinault Nation Indian.

26.     Plaintiffs Robert Reginald Comenout Jr., Marlene Comenout and Lee A. Comenout Sr. are all enrolled Yakama Indians.  They have been charged with alleged state tax violations for activities allegedly conducted on the allotment.  They are presently contesting state jurisdiction in pending state cases.  They seek dismissal and an injunction against Defendants for any similar future action.  They also seek future relief to operate and work

in the store on the allotment exempt from state court jurisdiction or interference with their Indian commerce. Agents of the state of Washington raided the convenience store on the allotment and criminally charged Co-Plaintiff Robert Reginald Comenout Sr., Pierce County Washington Superior Court No. 15-1-02002-3, Co-Plaintiff Robert Reginald Comenout Jr., No. 15-1-01998-0, Co-Plaintiff Marlene Comenout, No. 15-1-02001-5, and Co-Plaintiff Lee A. Comenout Sr., No. 15-1-01999-8, with violating the state of Washington cigarette tax law. Marlene Comenout is the wife of Robert Reginald Comenout Jr. The others are children of Robert R. Comenout Sr. All four have entered Alford pleas in the case. They were sentenced on May 13, 2016. The cases are on appeal filed May 25, 2016. Other persons were similarly charged, including Dennis Harris, who is a joint owner of the trust property.

## V. PARTIES DEFENDANT

27.     Defendant Pierce County Superior Court, state of Washington, is the trial court that allowed the filing of criminal complaints against four Plaintiffs without territorial or personal jurisdiction. The court is named by Plaintiffs to obtain injunctive relief or both for present proceedings outlined above and potential subsequent proceedings.

28.     Defendant state of Washington, through its division, is attempting to force state tax collection duties on Plaintiffs. It is named to obtain injunctive relief.

Complaint for Preliminary and
Permanent Injunction, etc. - 14

29.    Joshua Choate and Michael Pelliciotti are named only in their representative capacities as Assistant Attorney Generals of the state of Washington.  No personal relief is sought against either person.  The relief sought is to invalidate their representation against Plaintiffs in Pierce County Superior Court litigation.  Plaintiffs do not allege that either person violated any attorney professional ethics rules of conduct.  Their jurisdiction to act in place of the county attorneys in the case is questioned.

30.    Boyd Goodpaster and Lee Boling are employees or loaned employees of the Washington State Liquor and Cannabis Control Board. They each personally investigated and coordinated prosecution of Plaintiffs beyond territorial and without personal jurisdiction over Plaintiffs.  They are named at this time only in their official capacity, not personally.

31.    Officer J. Mark Keller has issued several affidavits against Plaintiffs as an agent on loan to the state of Washington.  His affidavits have recited legal principles but have failed to give a correct statement of the application of the state cigarette tax law to Indians, thereby misleading courts to issue invalid search warrants.  He is named in this case in his official capacity to afford  him opportunity to debate jurisdiction of Indian Country and related issues sought by Plaintiffs' Declaratory judgment.  At this time, he is not named personally.

32.    The Washington State Superior Court or Appellate Judges John

Complaint for Preliminary and
Permanent Injunction, etc. - 15

and Jane Doe are fictitious names of the judge or judges that Plaintiffs are proceeding against to obtain temporary and permanent injunctions against adjudicating personal jurisdiction against them thereby preventing collection of state of Washington cigarette taxes. An injunction is also sought preventing territorial jurisdiction of the allotment when only Indian activity is involved. When names of the Judges are obtained, they will be named only in their representative capacity for injunctive purposes and not personally. John and Jane Does, 1-10, are fictitious names of employees or agents of the State of Washington Liquor and Cannabis Control Board who participated in raids on the Indian Country Store, 908/920 River Road, Puyallup, Washington. They will be named in their representative capacity and personally if the discovery in this case supports relief depending on the extent of their participation.

**Basic Legal and Factual Background Applicable to All Claims**

33.    Plaintiff Robert R. Comenout Sr. is an enrolled Tulalip Indian. He is entitled to federal court jurisdiction pursuant to 25 U.S.C. §§ 345, 465 to protect his right to the allotment. Plaintiff Edward Amos Comenout III is an enrolled Muckleshoot Indian. He is also entitled to federal court jurisdiction pursuant to 25 U.S.C. §§ 345, 465. These two Plaintiffs are not forced to comply with Wash.Rev.Code Ch. 82.24. The definition statute, Wash.Rev.Code § 82.24.010(6) incorporates 18 U.S.C. § 1151(c) to define Indian Country.

34.    Edward Amos Comenout III lives on the land but has not worked or participated in the operation of the convenience store on the allotment. He has never been accused or charged in any way with any participation in the convenience store operation on the allotment.

35.    *Confederated Tribes and Bands of the Yakama Indian Nation v. Gregoire,* 658 F.3d 1078 (9th Cir. 2011) holds that the state of Washington cigarette tax law, as enacted in 1995 and still in force, does not <u>require</u> enrolled Indians selling cigarettes in Indian Country to comply with the state law.  It is the Indian's "economic choice," *id.* at 1087.  "The language also indicates that if an Indian retailer ever found itself facing a State collection effort for the retailer's non payment of the tax, the retailer would be shielded from civil or criminal liability." *Id.* at 1088.

36.    This case seeks a decision both a facial preemption challenge and an applied challenge.  The applied challenge is allowable as Pierce County Superior Court Judge Jerome T. Costello, in the combined cases on criminal violations listed above, on March 28, 2016, ruled that the state court had jurisdiction of the Comenouts, holding that state law preempted federal law.  The ruling by Judge Jerry T. Costello, Pierce County Superior Court, on the affected Plaintiffs' Motion to Dismiss was: "The Supreme Court has ruled that the cigarette tax law applies to the Comenouts and that this particular trust property is absolutely subject to Washington State law." The

Court applied state law to the facts and denied obstacle preemption. Both as applied and field preemption apply to grant injunctive relief. *Puente Arizona v. Arpaio,* ___ F.3d ___, 2016 WL 1730588 at *4 (9th Cir. 2016). A law is field preempted where the regulatory framework is so pervasive that there is no room for state regulation. *U.S. v. Locke,* 529 U.S. 89, 116, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). The treaties, enabling acts and constitutions of the western states, have acknowledged congressional control over Indian lands and prohibit state jurisdiction to tax or regulate enrolled Indians' activity in Indian Country. See, e.g., *Warren Trading Post v. Arizona State Tax Commission,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965), denying state tax legislation. *Id.* at 691, f. 18. The footnote states "Moreover, we hold that Indian traders trading on a reservation with reservation Indians are immune from a state tax like Arizona's, not simply because those activities take place on a reservation, but rather because Congress in the exercise of its power granted in Art. 1, s 8, has undertaken to regulate reservation trading in such a comprehensive (sic) way that there is no room for the States to legislate on the subject." The case in *Warren Trading* cited to sustain this statement is *Surplus Trading v. Cook,* 281 U.S. 647, 50 S.Ct. 455, 74 L.Ed. 1091 (1930) that held state sales taxes on federal military bases were preempted by the Federal Constitution. The opinion states, "It is not unusual for the United States to own within a state lands which are

Complaint for Preliminary and
Permanent Injunction, etc. - 18

set apart and used for public purposes" *Id.* at 650.  The opinion gives Indians reservations as an example and notes that state laws "can have only restricted application to the Indian wards." *Id.* at 651.  See also *Indian Country, U.S.A., Inc. v. State of Oklahoma ex rel. Oklahoma Tax Com'n,* 829 F.2d 967, 976-981 (10th Cir. 1987).

37.   A declaration is sought declaring that the state cigarette tax law, Wash.Rev.Code § 82.24.900, is not applicable if the federal law and state and federal constitutions prohibit the collection of tax by Plaintiffs as enrolled Indians.  Wash.Rev.Code § 82.24.080(2) exempts Indians.  Therefore, State courts have no jurisdiction of Plaintiffs' allotment.  See, e.g., *Dickson v. Carmen,* 270 F.2d 809 (9th Cir. 1959) and 165 F.Supp. 942, 946 (D.C. Cal. 1950); *Magnan v. Trammell,* 719 F.3d 1159 (10th Cir. 2013); *U.S. v. Ramsey,* 271 U.S. 467, 472, 46 S.Ct. 559, 70 L.Ed. 1039 (1926); *Solem v. Bartlett,* 465 U.S. 463, 467, n. 8, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984); *Wesley v. Schneckloth,* 346 P.2d 658 (Wash. 1959); *State v. Condon,* 79 Wash. 97, 139 P. 871 (Wash. 1914); *U.S. v. Stands,* 105 F.3d 1565, 1572 (8th Cir. 1997); *U.S. v. Sands,* 968 F.2d 1058, 1064 (10th Cir. 1992); *U.S. v. Jewett,* 438 F.2d 495, 497 (8th Cir. 1971); *State v. Klindt,* 782 P.2d 401 (Okla. 1989).

38.   On February 8, 1887, 24 Stat. 388, the United States Congress enacted the General Allotment Act. Its purpose was to lift reservation Indians out of poverty by dividing up reservations into specific allotments to be

occupied by individual Indians as a home. The European-American model was seen as the essential step. The model would provide both a home and subsistence farming. Section 5 of the Dawes Act provided that an Indian could select land. The land would be held in trust by the United States. "In trust for the sole benefit of the Indian to whom such allotment shall have been made." The Act of July 4, 1884, §1, 23 Stat. 76, created off reservation, public domain allotments not located on any Indian reservation. These allotments have the same status as tribal land. *Cohen's Handbook of Federal Indian Law,* § 16.03[2][e], page 1076 (Nell Jessup Newton ed. 2012). 25 U.S.C. § 465 enabled the Bureau of Indian Affairs, in 1926, to purchase what was then three acres of land at 908/920 River Road, Puyallup, Washington, 98371, for Edward A. Comenout Sr., an enrolled Quinault Indian, the father of Edward A. Comenout Jr. Edward Amos Comenout Sr. died in 1929 at age 24. The land has been held as a restricted public domain allotment ever since its purchase in 1926. The site is not located on any Indian reservation, nor is it subject to any jurisdiction of any recognized Indian tribe. The Bureau of Indian Affairs has jurisdiction to govern the site. No government has furnished police protection or offers services that would justify tax imposition. They share plunder from raiding the Plaintiffs, but offer nothing in return. The surrounding non Indian landowners are friendly to Plaintiffs and mutually cooperate. The deed, Exhibit A attached, was restricted

against alienation or encumbrance.  Filed with the deed, and also attached

as Exhibit A, is a certificate from a BIA Superintendent telling all the world

that the land was purchased from trust funds and "said real property being

purchased for a home."  Since purchased, the property has always been

owned by Indian  descendants of Edward A. Comenout and his then wife,

Anna Comenout Harris.  The only exception is Martina Garrison, a non

Indian, who now owns a part life estate.  Martina Garrison does not own a

full 100% life estate as she was awarded the life estate by the Will of Edward

Comenout Jr., who owned an approximate 56% interest.  She also owns

about a 5% interest inherited from her mother, Dorothy Harris, half sister of

Edward A. Comenout Jr.  This is the property now owned by joint tenants

along with Plaintiffs Robert R. Comenout Sr. and Edward A. Comenout III.

These two Plaintiffs live at the property and seek to continue the retail

convenience store business on the property.  The property has ten or more

owners.  Other probates of owners are in process.  The exact ownership

increases due to deaths of joint tenants whose interests go to the survivors.

When the Indian has proven to the satisfaction of the BIA that an Indian

allottee has satisfied that the "Indian allottee is capable of managing his or

her own affairs, the restrictions can be removed."  Until a patent is issued,

the land is restricted "as to sale, (sic) incumberance or taxation." 25 U.S.C.

§§ 349, 465.  "During the trust or restricted period, federal law protects

allotments against alienation, encumbrance and taxation without Congressional consent."

39.     Allotments can descend to heirs.   25 U.S.C. §§ 248, 391. Approximately eleven million acres of allotments are still currently in existence.  Allotted lands purchased with Indian trust funds remain non taxable as long as the restrictions remain in place.  25 U.S.C. § 335.  *Board of County Commissioners of Creek County v. Seber,* 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094 (1943).  The land will remain as Indian Country as long as Indians are owners.  *Bates v. Clark,* 95 U.S. 204, 209, 5 Otto 204, 24 L.Ed. 471 (1877).

40.     Allotments may be occupied by Indians not residing on an Indian reservation.   25 U.S.C. § 334.  The incidence of state tax on Indians is a "question of federal law." *Coeur D'Alene Tribe of Idaho v. Hammond,* 384 F.3d 674, 682 (9th Cir. 2004).  "Indian rights to a Congressional allotment are governed by federal - not state - law." *Nahno-Lopez v. Houser,* 625 F.3d 1279, 1282 (10th Cir. 2010).  Since the state law of cigarette taxation by express statute, Wash.Rev.Code § 82.24.900, denies application if the tax is prohibited by federal law, the panoply of federal law becomes part of the facts set forth herein.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

41.     Co-Plaintiff Robert Reginald Comenout Sr. inherited undivided

interests in the land, by virtue of surviving Edward Comenout Sr.'s spouse and other family members. The land is named "Indian Country."

42.    25 U.S.C. § 465 states unequivocally that "such lands or rights shall be exempt from State and local taxation." The control of Congress over Indian Country, whether subject to a restriction, whether "a trust allotment" or a "restricted allotment," is the same. "In practical effect, the control of Congress, until the expiration of the trust or the restricted period, is the same." *U.S. v. Ramsey,* 271 U.S. 467, 470-1, 46 S.Ct. 559, 70 L.Ed. 1039 (1926). Any attempt to regulate an Indian owner's use of an allotment must be commenced in federal court. Lack of state jurisdiction by declaratory judgment is the remedy. *U.S. v. City of Tacoma, Wash.,* 332 F.3d 574, 580 (9th Cir. 2003). The land has been reduced from about 3 acres to less than an acre, primarily due to the condemnation for River Road that adjoins the property. The road is four lanes in width with a high traffic count. It runs between the cities of Puyallup and Tacoma. The building is free standing and connects living quarters at one end with a walk-in convenience store at the other end. The living quarters have been modified to allow for wheelchair disabled persons occupancy. A large smokestack type sign, stating "Indian Country," has been erected on the property. It can easily be seen by automobiles traversing River Road.

43.    Co-Plaintiffs Robert Reginald Comenout Sr. and Edward Amos

Comenout III jointly own over 15% of the property.  Co-Plaintiff Edward Amos

Comenout III inherited his joint ownership in the land from his great uncle,

Edward Amos Comenout Jr.  Edward Amos Comenout Jr. died, unmarried,

with no children, on June 4, 2010.

44.    Edward Amos Comenout Jr. was the son of Edward Amos

Comenout Sr.  Edward Amos Comenout Jr. owned an approximate fifty-six

percent (56%) interest in the land and also the permanent buildings located

on the land. Edward Amos Comenout Jr. died testate, but did not name a

personal representative. The United States Department of Interior, Office of

Hearings and Appeals, probated the trust land, but not the permanent

buildings, which are classified as personal property by the BIA, under

Probate Number P000086947IP.  The Department of Interior probate of

Edward Amos Comenout Jr.'s estate did not appoint an administrator, but

on December 31, 2012, the BIA probate judge distributed the land to the

heirs of Edward Amos Comenout Jr. named in his will. Administrative Judge

Thomas F. Gordon, who heard the probate case, did not probate and did not

include any permanent structures located on the premises as part of the

trust estate.  The December 31, 2012, ORDER APPROVING WILL AND

DECREE OF DISTRIBUTION of the BIA probate judge contained an

explanation why the buildings were excluded.  It states in its relevant part:

> At hearing, testimony established that there is a store located
> on decedent's trust allotment 130-1027. The inventory provided

by BIA does not include any structures located on said allotment as a part of the decedent's Indian trust estate. "As a general rule the Department considers permanent improvements to be non-trust property, and OHA does not probate them." 76 FR 7500, 7501, February 10, 2011. It is herein observed, however, that the disposition of such permanent improvements by other tribunals of competent jurisdiction are governed by the provisions 43 C.F.R. § 30.236 (76 FR 7500, 7507, February 10, 2011). Accordingly, this decision does not further address the ownership rights of any structures located on said allotment.

The cited regulation, 43 C.F.R. § 30.236(d), provides that the BIA probate judge not distribute "any non trust permanent improvement." The regulation, 43 C.F.R. § 30.236(d)(2), also states that a BIA judge "(2) Can approve a consolidation agreement under subpart F of this part that includes a covered permanent improvement." The reference is to 43 C.F.R. § 30.150 allowing a settlement among interested parties if all are "advised as to all material facts;" that all parties "understand the effect of the agreement" and "It is in the best interest of the parties to settle." Accordingly, the BIA has no jurisdiction of the buildings on the land. The Defendants have applied to state courts for search warrants and have allegedly trespassed on the land in total defiance of 25 U.S.C. § 349 and *Confederated Tribes of Chehalis Reservation v. Thurston County Board of Equalization,* 724 F.3d 1153 (9th Cir. 2013), holding that the state law, Wash.Rev.Code § 84.04.080, was preempted and irrelevant. "Therefore, it is irrelevant whether permanent improvements constitute personal property under Washington law." *Id.* at

1158.  The percentage ownership of the building is 56 or more percent.  The Estate and Robert R. Comenout Sr. own together over a 2/3 interest in the buildings.

45.    Under current law, when personal property is located off reservation owned by a deceased Indian and the Indian courts have no jurisdiction or decline to probate the assets, state probate courts have jurisdiction.  The probate commenced in Spokane County, Washington, is an ancillary administration of a foreign will.  See, e.g., *In re Estate of Gopher,* 310 P.3d 521, 523 (Mont. 2013); *In re Lynch's Estate,* 377 P.2d 199 (Ariz. 1962).  The probate in Spokane County, Washington, was commenced in Spokane County Superior Cause No. 10-4-01216-0 on September 22, 2010.  The probate is an insolvent probate and is still pending.  Presently, no administrator is appointed as successor.  However, Robert E. Kovacevich was appointed Special Administrator on April 3, 2015, to act only on matters where the estate participates in litigation.  He is presently serving as Special Administrator.

46.    After Edward Amos Comenout Jr.'s death, the custom of traditional Indian elder rule passed from him to Co-Plaintiff Robert Reginald Comenout Sr.  Indian elder rule custom and practice allows Robert Reginald Comenout Sr. to determine who resides or can do business on the property.

Presently, Robert Reginald Comenout Sr. is fulfilling the custodian and property management role on the property.

**The State Courts have no jurisdiction over Plaintiffs right to live and make a living on the allotment.**

47.   *State v. Comenout,* 267 P.3d 355 (Wash. 2011), holds that the state has criminal jurisdiction to prosecute the Comenouts for activity on the allotment.   "Washington assumed full nonconsensual civil and criminal jurisdiction over all Indian country outside established Indian reservations. Allotted or trust lands are not excluded from full nonconsensual state jurisdiction unless they are 'within an established Indian reservation'." *Id.* at 408. This case is the opposite of *Magnan v. Trammell,* 719 F.3d 1159 (10th Cir. 2013), and other cases cited, holding there is no criminal jurisdiction of the state over alleged Indian crime on an off-reservation allotments.   In *Magnan,* the Court released the defendant from state execution.   "We conclude that the Tract, at the time of Magnan's crimes, was Indian country and that exclusive jurisdiction over these crimes rests with the United States." *Id.* at 1176.  (Internal quotation marks omitted.)  Both cases cited 18 U.S.C. § 1151 that contains § 1151(c) "all Indian allotments" in the definition of Indian country.   Exclusive federal jurisdiction over allotments is also restated at 25 U.S.C. § 349.  Further, the land and rights are exempt from state and local taxation, 25 U.S.C. § 465. The Defendants have refused to acknowledge federal preemption as established by the 1974 case of *Makah*

*Indian Tribe v. Clallam County,* 73 Wash.2d 677, 440 P.2d 442 (1968), a case that established that enrolled Indians did not have to pay Washington personal property tax as Congress preempted the tax.  Congress has control.

The opinion by colorful writer, Justice Hale, states:

> Congress neither having specifically provided for the taxation by the state or its subdivisions of personal property owned by a Makah Indian, nor having impliedly granted such power, the ad valorem personal property tax by Clallam County may not be imposed upon personal property which is continuously used, kept and maintained on the Makah Reservation by a Makah Indian.  Of course, Indians who live here are citizens of the state and of the United States, with all of the rights, privileges and immunities that citizenship carries.  <u>But they have additional rights, privileges and immunities vouchsafed them by contracts with the United States, called treaties, and implementing federal legislation, not enjoyed by the descendants of the white settlers on whose behalf, in part, the United States negotiated and made treaties with the Indians' forebears.</u>
>
> Although the natural dignity of the American Indian as a person and a citizen, his valor as a warrior, and his contributions to this country, military and civil, cannot and ought not be denied, one wonders, as he reads the case law on Indian matters, whether the law has not conferred upon tribal Indians and their descendants what amounts to titles of nobility, with all that entails, in contravention of Article 1, § 9, of the United States Constitution prohibiting such titles.  <u>But this is a question beyond our jurisdiction.  That the Makahs will, while receiving most of the benefits of taxpayers and citizenship, escape some of the correlative responsibility of citizenship as a problem for the Congress and the President to solve.</u>  *Id.* at 686-687. (Underlining supplied.)

*Miami Tribe Of Oklahoma v. U.S.,* 656 F.3d 1129, 1143 (10th Cir. 2011), requires a Congressional grant of jurisdiction.

**Federal preemption applies.**

48.     The state of Washington has asserted State court jurisdiction to execute search warrants to seize goods from Plaintiffs' store for non payment of state cigarette tax. *Begay v. Roberts,* 807 P.2d 1111 (Ariz. 1991). Washington State cannot tax sales of non cigarette tobacco items. The state of Washington has agreed to a permanent injunction.   See Exhibit B attached.   Apart from alleged liability for state cigarette tax, no binding authority exists allowing state employees to enter onto the allotment and seize Indian goods. Even if the tax was payable, Plaintiffs seek a declaration that the state courts lack jurisdiction to issue state tax warrants and probable cause warrants to seize Indian goods in Indian Country.

49.     The state courts have also refused to apply the Ninth Circuit case of *Confederated Tribes and Bands of the Yakama Indian Nation v. Gregoire*, 658 F.3d 1078 (9th Cir. 2011).   The case holds that although the state law may apply, enrolled Indians living in Indian Country are not *required* to collect state of Washington cigarette taxes.   *Id.* at 1078.   The holding is compatible as the checkerboard jurisdiction on Indian reservations would apply the cigarette taxes to non Indian retailers on the reservation. The Indian is an exempt person under Wash.Rev.Code 82.24.080 and the Indian is preempted under Wash.Rev.Code 82.24.800. The consumer must pay the tax. *Id.* at 1089. The state courts cling to *State v. Comenout*, 173 Wash.2d 235, 267 P.3d 355 (2011) and refuse to recognize constitutional

federal preemption of the land. *Comenout* is also preempted by *Yakama*.

50.     In *Comenout,* the State Supreme Court ignored the basic law that statehood ended the federal government's jurisdiction to punish non Indians "but authority in respect of crimes committed by or against Indians continued after the admission of the state as it was before." *U.S. v. Ramsey,* 271 U.S. 467, 469, 46 S.Ct. 559, 70 L.Ed. 1039 (1926), a case holding that a restricted allotment was Indian Country.

The Pierce County courts have erroneously applied the case of *State v. Comenout,* 173 Wash.2d 235, 267 P.3d 355 (Wash. 2011), holding the allotment was part of the state. *Id.* at 358. It concluded that the allotment was within state jurisdiction and the cigarette tax applied to the plaintiffs. Plaintiffs Robert R. Comenout Sr., Edward A. Comenout and Robert R. Comenout Jr. were parties in the *Comenout* case. All three were dismissed ex parte by the prosecution. See Exhibit C attached. The case was never allowed to go forward. Robert R. Comenout Jr.'s case dismissal admitted that he was charged without evidence. The case also was based on facts of Edward A. Comenout Jr.'s tribal membership in the Quinault Indian Nation. Since June 4, 2010, the date of death of Edward A. Comenout, no Quinault Indian has any ownership in the underlying land. Plaintiff Estate of Edward A. Comenout Jr. owns the majority interest in the buildings on the land. The Estate cannot qualify as a tribal member. The Plaintiffs are all enrolled Indians. Robert R. Comenout Sr. is a Tulalip tribal member. The Yakama

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and Tulalip tribes have retroceded from state jurisdiction originally granted to the states by Public Law 280, 67 Stat. 588 (1953). The retrocession was accomplished under a 2012 state law, Wash.Rev.Code, engrossed House Bill 2233, 2012 session laws of Washington c 48 § 3, effective June 7, 2012. Wash.Rev.Code §§ 37.12.160-180. The only meaningful limit is sexually violent predators, Wash.Rev.Code § 37.12.170. The *Comenout* case, 267 P.3d 355, held that the Quinault Nation retroceded state jurisdiction but the then existing law excepted off-reservation allotments from the retrocession. The reasoning was completely flawed as the Quinault Tribe never had any authority over the Comenout allotment as Wash.Rev.Code § 37.12.060, the existing statute excepted restricted allotted lands from Public Law 280 including any regulation of right of possession contrary to federal statute. The federal statute applying to the Puyallup allotment is 25 U.S.C. § 348, among others, the federal statute preempts any P.L. 280 jurisdiction even if Public Law 280 granted tax jurisdiction to the state, which it did not. *Comenout, supra* at 357, followed *State v. Cooper,* 928 P.2d 406, 408 (Wash. 1996) that stated, "Washington assumed state jurisdiction over all Indian Country with respect to the eight categories of law enumerated in RCW 37.12.010." The later federal case of *Confederated Tribes of Chehalis Reservation v. Thurston County Bd. of Equalization,* 724 F.3d 1153, 1159 (9th Cir. 2013) held, 25 U.S.C. § 465, a statute that also applies to the Comenout allotment, preempts state taxation. Since the state dismissed the *Comenout*

Complaint for Preliminary and
Permanent Injunction, etc. - 31

case ex parte, it was a type of invited error as the Comenouts could not appeal the *Comenout* case and point out the erroneous State Supreme Court conclusion. The state law then applicable to assumption of civil jurisdiction, Wash.Rev.Code §§ 37.12.010-140 did not contain a detailed description of Indian Country, even though the state cigarette tax law does. See, e.g. Wash.Rev.Code § 82.24.010(6). The 2012 law adopts allotments as Indian Country.   Wash.Rev.Code § 37.12.160(9)(d)(iii).   All Indian allotments, including the Comenout allotment, are now defined. *State v. Comenout,* 267 P.3d at 358, assumed that the state/Quinault Tribe compact linked the Quinault Tribe license requirement to the Comenout allotment. Comenout actually had a Quinault business license. *State v. Jim,* 273 P.3d 434, 440 (Wash. 2012) distinguished *Comenout* on questionable reasoning holding that the Maryhill site was the same as part of four reservations, three of which were in the state of Oregon and Comenout was an individual allotment. The *Comenout* case is not valid precedent for the many reasons stated. Among the reasons is that the Washington State Constitution, art. 26, Second, confirmed that Indian land was exclusively retained to Congressional jurisdiction.

51.    The challenge to constitutionality of state laws regulating Plaintiffs' activities on federal allotments is not barred by what is known as the *Rooker-Feldman* doctrine. *Morrison v. Peterson,* 809 F.3d 1059, 1070 (9th

1
2
3

Cir. 2015); *Skinner v. Switzer,* 562 U.S. 521, 532, 131 S.Ct. 1289, 179

L.Ed.2d 233 (2011).

4       The *Comenout* decision erroneously failed to recognize that the property

5   was trust property. Washington's Laws, Ch. 64.16, is titled "Alienation of

6   land by Indians." Wash.Rev.Code § 64.20.030 provides that Indians can sell

7
    restricted lands without permission of the U.S. Government, "it being the
8
9   intention of this section to remove from Indians residing in this state all

10  existing disabilities relating to alienation of their real estate." This statute is

11  directly opposite to 25 U.S.C. § 348 stating in part, "and if any conveyance

12
    shall be made of the lands set apart and allotted as herein provided, or any
13
14  contract made touching the same, before the expiration of the time above

15  mentioned, such contract shall be absolutely null and void." The allotment

16  has never been relieved of the restrictions. 25 U.S.C. § 391 and 25 U.S.C. §

17  465 allow individual allotments and rights to be "exempt from State and local
18
19  taxation." 25 U.S.C. § 349 only allows removal of restrictions when the

20  Indian owner is "competent to manage his own affairs." The majority interest

21  owned by the Plaintiff Estate of Edward A. Comenout Jr. and also the

22  percentage owned by Plaintiff Robert R. Comenout Sr. is free of local taxation
23
24  pursuant to *Confederated Tribes of Chehalis Reservation v. Thurston County*

25  *Board of Equalization,* 724 F.3d 1153, 1157 (9th Cir. 2013), a case rejecting

26  state tax law and applying 25 U.S.C. § 465. Any state use tax relating to the

27  buildings is also preempted. *Mescalero Apache Tribe v. Jones,* 411 U.S. 145,
28

158, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). *U.S. v. Boylan,* 256 F. 468, 485 (D.C. N.Y. 1919) invalidated all state court proceedings ejecting Indians from their allotments. The creation of an allotment did not terminate the oversight of the United States. *Id.* at 493. "Their interest therein came by descent from the original proprietors of the soil, who owned and occupied it long before the discovery of America by Christopher Columbus." *Id.* at 486. "A transfer of the allotments is not simply a violation of the proprietary rights of the Indian. It violates the governmental rights of the United States." *Id.* at 487.

52.    The *Comenout* case was heard on a Motion to Dismiss the criminal information in state court. *Id.* at 235. It was forwarded to the State Supreme Court by Division Two based only on the state information on Defendant's Motion to Dismiss. The case was later dismissed ex parte by the state on its own Motion. Appendix C. The Supreme Court did not have a certified copy of the original restricted Deed or the defendant's facts of the certificate of the BIA clearly indicating that the land was purchased for a home with Indian trust funds. The Court had only the prosecutions' allegations to review. *Yakama,* 658 F.3d at 1088 also states:

> The language also indicates that if an Indian retailer ever found itself facing a State collection effort for the retailer's non-payment of the tax, the retailer would be shielded from civil or criminal liability, except in the instance where the Indian retailer has failed to transmit the tax paid by the consumer and collected by the retailer.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) noted that the Makah, Lummi and Colville Tribes imposed their own cigarette tax. *Id.* at 151. The state tax statute, Wash.Rev.Code § 82.24.260, is headed - "Person to pay or <u>affix</u> stamps-liability" and excepts an Indian Tribal Organization with respect to sales to enrolled members of the tribe. *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 480, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976) excludes all sales "to Indians." *Moe* also rejects all state tobacco licenses on  reservation Indians.   *Ibid.* at 480.   18 U.S.C. § 2346(b)(1).  Jurisdiction is also prevented by *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).  The *Comenout* decision, *supra* at 357, applied Wash.Rev.Code §§ 37.12.010 through 060 to find jurisdiction.  The case not only overlooked the state constitution and the express exemption in 28 U.S.C. § 1360(b) of any congressional delegation in Public Law 280 to allow state taxation.  Public Law 280 only allowed partial jurisdiction to the state.  The delegation did not allow delegtion to tax Indians or Indian tribes. It also ignored its own case, *Makah Indian Tribe v. Clallam County,* 73 Wash.2d 677, 440 P.2d 442 (1968), reviewed above reserving Indian tax issues to Congress.  Further, *Comenout* missed Wash.Rev.Code § 37.12.060. That statute applies to lands held in trust that are subject to "restriction against alienation imposed by the United States."   The statute prohibits state jurisdiction to adjudicate "control, licensing or regulation" depriving any

Indian of their rights. Carole E. Goldberg, *Pub.L.280: The limits of State Jurisdiction over Reservation Indians.* 22 U.C.L.A. L.Rev. 535, 557 (1975) recognizes the distinction stating:

> The fourth alternative utilized by the states to minimize the financial hardship of PL-280–assumption of jurisdiction only over taxable non-trust lands within the reservations– is a unique feature of Washington's 1963 law accepting PL-280 jurisdiction.  Since there is no pattern to the distribution of trust and non-trust lands on a reservation, Washington has created a jurisdictional labyrinth by mandating that on non-trust land state jurisdiction encompasses every subject matter, <u>while on trust land, it applies only to certain enumerated subject matters unless the tribe ask for full state jurisdiction under PL-280.</u>  (Underlining added.)

The code revisor drafting Wash.Rev.Code § 43.06.455 (14)(b)(iii) also made the distinction.  That is, that Washington cannot require an Indian selling cigarettes on his/her trust land to get a tribal tobacco license. *Comenout*, 267 P.3d at 358, also missed the difference between a Indian retailer not on trust land and an Indian lessee which would have changed the outcome.

### The *Comenout* case cannot be binding authority especially after *Yakama* and *Tohono O'odham.*

53.     The greatest interest that Edward A. Comenout Jr. ever had over the property was around 56%.  He died June 4, 2010.  Since then, no Quinault tribal member has any ownership in the allotment. The *Comenout* case, 267 P.3d at 358, reviews Quinault tribe retrocession to attempt to find state jurisdiction.  The tribe could never bind the other non members, as they were not members of the tribe and did not live on the reservation.  The

tribe never had any right to convey the allotment to the state. After June 4, 2010, it could have no control of any kind over the property. The cigarette contract with the Quinault and the Quinault license or control under the compact cannot be even remotely precedential as the Quinault tribe cannot bind non member, non residents of the Quinault reservation. An Indian tribe, even if the Indian allotment owners consent, cannot exercise any jurisdiction beyond the borders of the reservation. *Miami Tribe Of Oklahoma v. U.S.*, 656 F.3d 1129, 1143 (10th Cir. 2011). At the last paragraph of the *Comenout* case, *supra* at 358, the State Supreme Court stated that Wash.Rev.Code § 82.24.110 and 500 criminalizes the possession and sale of cigarettes by Indians on the allotments. The case did not cite *Confederated Tribes and Bands of the Yakama Indian Nation v. Gregoire,* 658 F.3d 1078 (9th Cir. 2011), a case not involving any cigarette compact with any tribe. *Yakama* holds that an enrolled Indian cannot commit a cigarette tax crime, *id.* at 1088. The federal case controls. See Wash.Rev.Code § 82.24.900.

Tohono O'odham Nation v. City of Glendale, 804 F.3d 1292 (9th Cir. 2015) also invalidates the *Comenout* decision as federal obstacle preemption invalidates Wash.Rev.Code § 37.12.020, the state statute relied on in *Comenout,* 267 P.3d at 358, for retrocession. The statute, according to the case, did not apply to land outside a reservation.

## Congress mandated that Public Law 280 did not apply to State tax matters.

54.    The *Comenout* case cites Public Law 280, including 28 U.S.C. §

1360, *id.* at 357, but fails to recognize that Public Law 280 specifically excludes state taxation of Indian property.  The case then applies a non tax case, *State v. Cooper,* 130 Wash.2d 770 (1996).  *Id.* at 239.  The state statute could not apply to the allotment as federal law prevents state taxation.  25 U.S.C. § 465; 25 U.S.C. § 349.

   *Bryan v. Itasca County, Minnesota,* 426 U.S. 373, 390, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) (rejecting mobile home tax owned by an Indian living on trust land).  The reference is to 28 U.S.C. § 1360 (a) and (b) that is part of P.L. 280.  It states "Nothing in this section shall authorize. . .taxation or any personal property. . .belonging to any Indian. . .subject to a restriction on alienation."  Directly at issue in *Bryan* was state tax in Indian country.  The review was of the state case (228 N.W.2d 249) that stated: "The language and structure of P.L. 280 strongly suggest that Congress intended to convey to the states the authority to enforce its revenue laws in Indian Country." (228 N.W.2d at 254)."  The U.S. Supreme Court reversed stating:

> ["Therefore, the state court held: 'Public Law 280 is a clear grant of the power to tax.' *Id.* at 406, 228 N.W.2d, at 256.  We disagree.  That conclusion foreclosed by the legislative history of Pub. L. 280 and the application of canons of construction applicable to congressional statutes claimed to terminate Indian immunities."]

*Bryan,* 426 U.S. at 378.  The Minnesota Supreme Court was reversed on federal preemption.  Washington is an optional P.L. 280 state, meaning that it had to legislate to be included.  P.L. 280 did not allow the eradication of tax immunity of Indians.  All federal cases apply to Indians in Indian

Country. There is no room for interpretation. The P.L. 280 permission cannot affect state tax immunity of Indians restricted as to sale, encumbrance and taxation "until these restrictions are cancelled by an unrestricted deed issued by the Secretary of Interior." Wash.Rev.Code § 37.12.060. Wash.Rev.Code § 37.12.010 conflicted with 25 U.S.C. § 465 in that it attempted to transfer the off-reservation land. The allotment could not be affected. The reason is that until the restrictions are lifted Congress has exclusive jurisdiction of the land. *Comenout, id.* at 358, relies on the statute for state jurisdiction. The decision assumes that the Quinault Nation had ownership or control of the land. The Quinault Nation never had control or ownership of the land as the reason for the allotment was to allow Edward A. Comenout Sr. to obtain a home off the Quinault reservation so he could blend into mainstream society off reservation. Edward A. Comenout Sr. died in 1929. Since that time, the land has been owned only about 56% by a Quinault tribal member and has never been governed by any Indian tribe.

55.     An Indian in Indian country is subject to prosecution federally if the offense was committed in Indian country. 25 U.S.C. § 1301(4). 18 U.S.C. § 1151(c) applies to Comenout's allotment. A non member Indian must be living on another Indian reservation to be subject to prosecutions by the tribe on which he is living. See, e.g., *U.S. v. Lara,* 541 U.S. 193, 196, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). *Miami Tribe Of Oklahoma v. U.S.,*

656 F.3d 1129 (10th Cir. 2011) holds that a tribe cannot rule beyond its borders. "Conversely, where no expression of congressional intent or purpose exists, a tribe cannot establish jurisdiction through its unilateral actions." *Citizens Against Casino Gambling in Erie County v. Stevens*, 945 F.Supp.2d 391, 401 (D.C.N.Y. 2013).

Also of importance is that the federal law, 25 U.S.C. § 345, makes no distinction between criminal or civil law.  It grants federal district court jurisdiction to an allottee, including Plaintiffs "may commence and prosecute. . .any action. . .in relation to their right thereto." The cases cited herein prove only federal jurisdiction.  See, e.g., *U.S. v. Stands,* 105 F.3d 1565, 1571-72 (8th Cir. 1997).  *State v. Jim,* 273 P.3d 434, 440 (Wash. 2012) assumes that the Comenout land was owned "for an individual Indian." This assumption is wrong as it was owned by nine or ten Indians and one non Indian, and points out why a dismissed case by the prosecution is not precedent.  Both tribes and individual Indians are treated the same on off-reservation allotments.  25 U.S.C. § 465.  *Comenout, supra,* at 357, also applied Public Law 280 and followed *State v. Cooper,* 130 Wash.2d 770, 928 P.2d 406 (1996), a child molestation case.

The *Comenout* case also eviscerated the Washington Constitution Article 26, Second: "and the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States."

*Comenout* held that any off-reservation site is controlled by the State.  The holding clashes with the State Constitution.  ". . .there is nothing in the Constitution of the United States to require it, or to prevent a state from allowing past action to be modified while a case remains in court." *King v. State of West Virginia,* 216 U.S. 92, 100, 30 S.Ct. 225, 54 L.Ed. 396 (1910).  25 U.S.C. § 349 states that allotments shall "be subject to the exclusive jurisdiction of the United States."  25 U.S.C. § 465 gives the Secretary of Interior a right to establish public domain lands "within or without existing reservations."  Anywhere, anytime.  "Such lands or rights shall be exempt from State and local taxation."  Rights include "surface rights."  Non reservation Indians can own allotments.  25 U.S.C. §§ 334, 336, 337.  "Federal common law governs an action for trespass on Indian lands." *U.S. v. Milner,* 583 F.3d 1174, 1182 (9th Cir. 2009).  Unlawful presence on an allotment is a common law trespass giving jurisdiction under 25 U.S.C. § 345.  See, e.g., *Nahno-Lopez v. Houser,* 625 F.3d 1279, 1282 (10th Cir. 2010). All statutes involving Indian allotments are still in force.  25 U.S.C. § 335.

56.     Collateral estoppel requires a final judgment on the merits. *State v. Williams,* 132 Wash.2d 248, 254, 937 P.2d 1052 (1997).  The party asserting collateral estoppel bears the burden of proof.  *Id.* at 254.

**The Cigarette Tax Law was passed after the allotment was issued.  It cannot apply to the allotment Indian owners or Indian workers.**

57.     The time of passage of the law in *Tohono O'odham Nation v. City*

of Glendale, 804 F.3d 1292 (9th Cir. 2015) is relevant to Comenout's acquisition of the allotment in 1926. *Peoples v. Puget Sound's Best ChickenA, Inc.*, 185 Wash.App. 691, 345 P.3d 811 (Div. 2, 2015) applies. Laws passed after the land was taken as a federal enclave do not apply. The allotment is defined as a federal enclave. *Matheson v. Kinnear*, 393 F.Supp. 1025, 1027 (D.C. Wash. 1974). The state tax law was enacted in 1935, after the land was purchased. Exhibit A to this reply attaches the certified copy of the Deed filed in 1926. The state laws passed after 1926 are not applicable to the allotment.

58.     *C.I.R. v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948) ". . .a judicial declaration intervening between the two proceedings may so change the legal atmosphere to render the rule of collateral estoppel inapplicable." *Id.* at 600.  Many cases on preemption have been decided since the 2011 *Comenout* case.

59.     The State attempts to hold a non taxable Indian subject to state law of mere possession. *U.S. v. Brigman,* 874 F.Supp. 1125, 1132 (E.D. Wash. 1994) allows Indians to possess unstamped cigarettes. *Indian Country U.S.A.. Inc. v. State of Oklahoma ex rel. Oklahoma Tax Commission,* 829 F.2d 967, 974 (10th Cir. 1987) has new vitality as the cigarette tax issues are preempted by the *Yakama* case cited above. The Oklahoma sales tax on bingo conducted on an allotment was preempted.

Co-Plaintiff Robert Reginald Comenout Sr. has lived on the property

Complaint for Preliminary and
Permanent Injunction, etc. - 42

for many years. He inherited part of his interest in the property at least as early as 1987. He suffered debilitating strokes in 1991 and 2011. He is over 82 years old and confined to a wheelchair most of the time. He can only walk short distances with the aid of a cane or support of others. He cannot dress himself, use the bathroom or bathe without aid of others. He cannot care for himself. He is under medications and physically disabled. He lives on the property in the residential portion. He needs to stay on the property as it has been physically altered to accommodate wheelchair occupied disabled persons.

Co-Plaintiff Edward Amos Comenout III is approximately 24 years of age and lives on the property. He has no other place to live and is dependant on his grandfather, Robert Reginald Comenout Sr., for support, direction and advice. He has consistently and completely acknowledged that the Indian elder rule applies to the property. Since the death of his great uncle, Edward Amos Comenout Jr., he and other relatives have acknowledged that they are subservient to Robert Reginald Comenout Sr. as the ruling elder of the property.

Co-Plaintiff Robert Reginald Comenout Sr. has complied with the purpose of the allotment purchase. He is well liked by non Indians in the area, which is an important element to circumvent hostility to Indians due to Indian fishing rights condemned by non Indian sportsmen. He acts only to protect the property and its congressional purpose. He has been

ordained by Indian law to carry on the purpose envisioned by Congress and by Edward Amos Comenout Jr.   Among the purposes is to prevent the reason for the Allotment Act, that is, to prevent the land from purchase by greedy non Indians.

Non Indian nearby business and customers of Robert Reginald Comenout Sr. consider and treat him as an equal.   The only disruptive forces are the Puyallup Tribe, the Quinault Nation and the state of Washington, who fear that existing law will create a lower tax base and deprive these governments of tax revenue they obtain from competitive cigarette sales.   They have never offered the same remedy to Robert Reginald Comenout Sr. and other owners, i.e., a compact on cigarette sales. This remedy, however, would prevent government agencies, who since the early 1970's have raided the business, from distributing bonuses and other payments.

The city of Puyallup has halted the construction of an Indian Country sign and billboard contending that city and state sign regulations apply. The city and county maintain that they have jurisdiction to regulate the property.   However, they will not respond to police calls.

Despite trust allotment laws, the state continues to seize commercial cigarettes and prosecute Indian sellers.   The state of Washington Liquor Board and State Department of Revenue refuse to recognize Plaintiff's state constitutional rights under Wash.Const. art. 26, Second, in which the state

agreed to: "Forever disclaim all right and title. . .to all lands. . .owned or held by any Indian." The fact and law that Public Law 280 did not allow state tax jurisdiction; that federal supremacy and preemption applies to lands defined in 18 U.S.C. § 1151(c) is ignored by state tax agencies. A declaratory judgment is also sought on state tax jurisdiction that differs from other state jurisdiction issues, since P.L. 280 did not grant tax jurisdiction. The state of Washington, in recent years, has passed laws to allow recreational use of cannabis. The public policy of Washington now is to allow the use of cannabis. It is no longer a criminal offense to smoke cannabis. Therefore, the laws are civil regulatory. This Complaint also seeks a ruling that the sale and use of cannabis by Plaintiffs on the allotment is allowable under case law and cannot be taxed by the state of Washington or local government. See *Arizona v. Tohono O'odham,* 818 F.3d 549, 555 (9th Cir. 2016).

The state of Washington contends that it has jurisdiction of the owners' activities on the site, including Co-Plaintiffs, despite the restricted status under 25 U.S.C. § 345 and other laws. The site is a federal instrumentality and free of state tax. See *Warren Trading Post Co. v. Arizona State Tax Commission,* 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965) and *Oneida Tribe of Indians of Wis. v. Village of Hobart, Wis.,* 732 F.3d 837, 839 (7th Cir. 2013). Wash.Rev.Code § 64.20.030, enacted in 1899, removing "all Indians residing in this state all disabilities relating to alienation of their

real estate." This statute conflicts with 25 U.S.C. §§ 349, 465.  The term "checkerboard" referred to herein divides criminal jurisdiction for crime committed in Indian country dependent upon whether crime committed in Indian country is a major crime (18 U.S.C. §§ 1152, 1153), or not, whether the accused an Indian or non Indian, whether the victim is an Indian or non Indian or whether the crime is a victimless crime.   The state and type of crime can also be an issue as tax crimes are not within Public Law 280, 67 Stat. 588, 18 U.S.C. § 1162, 28 U.S.C. § 1360.   State civil jurisdiction depends on where the activity occurred, tribal jurisdiction, whether Indian or non Indian and whether the activity is preempted by treaty or federal law, and, if a non Indian, was there a "consensual relationship" with a tribe. See, e.g., *Montana v. U.S.,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).  The state of Washington is a non mandatory Pub. L. 280 state and had to disclaim authority over Indian lands to enter the union.

**FIRST CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 59 as though fully set out here.

60.1.  Plaintiffs seek a declaratory judgment that the allotment is defined under 18 U.S.C. § 1151(c). 60.2.  That federal not state law applies to the Indian allotment owners and Indian activities on the allotment. 60.3. That all of the Defendants and each of them have no right to control, regulate or adjudicate the convenience store business that has been

conducting business on the allotment when conducted by Plaintiffs or that will be conducted by the Plaintiffs, including Plaintiff Edward Amos Comenout III, in the future on the property.   60.4.   That Defendants have no personal jurisdiction of Plaintiffs' activity on the property except for Indian-non Indian crime which has not occurred on the property.   60.5. Plaintiffs further seek a declaration that no jurisdiction exists by any Defendant and seeks a declaration and injunction against any further activity of the type Defendants have taken on the property, including the present or future action to be taken by judges of the state courts in their representative capacities.   60.6.   Plaintiffs seek a ruling that state jurisdiction is prevented by exclusive federal control and jurisdiction of enrolled Indians, that the exclusive jurisdiction over the allotment is in the United States Congress.

61.   A declaration that the acts of Defendants violate the United States Constitution, the laws of the United States, creating allotments and allotment rights and other federal laws.

62.   A declaration that a ripe and justifiable controversy exists and Plaintiffs, by virtue of 25 U.S.C. § 345, 28 U.S.C. § 1353 and other laws, have standing and jurisdiction to assume their rights.   As a result of the foregoing, Plaintiffs are entitled to declaratory and injunctive relief, temporary and permanent, against Defendants.

63.1. Plaintiffs Robert Reginald Comenout Sr., Robert Reginald

Comenout Jr., Marlene Comenout and Lee A. Comenout Sr. request a declaration that this Court declare that Wash.Rev.Code § 64.20.030 is invalid by federal laws, 25 U.S.C. §§ 348, 349 and the Supremacy clause, U.S. Const. art. 6, cl. 2 and Art. 1, § 8, cl. 3, Wash. Const. art. 26, cl. 2, by federal preemption, express, field, obstacle, conflict and preemption violating Congressional interests.   That the state court actions in the prosecutions listed at pages 12 and 13 of this Complaint be dismissed for lack of jurisdiction. 63.2. That the Court find that no jurisdiction existed to issue a state court warrant for their arrests, that the property taken from them incident to arrest be returned.   63.3.   That the Washington State cigarette excise tax discriminates in favor of military base concessionaires and against the Plaintiffs as Indian retailers. The difference in treatment is not rationally related to the purpose of the tax statutes.   Therefore, the statutes are void.   63.4.   That all Plaintiffs may possess commercial cigarettes on the property that do not have state of Washington tax stamps affixed to the packages. 63.5.   That Plaintiffs do not have to collect or pay any state tax from allotment sales; that suitable injunctions issue to the Court of Appeals' judges now assigned the appeals to the cases be enjoined from further processing as there is no state jurisdiction. 63.6. All Plaintiffs request that all Defendants be permanently restrained from bringing any action in the future seeking to obtain or adjudicate cases that are based on state jurisdiction of enrolled Indian operation on the allotment.   63.7.   All

Plaintiffs seek a declaration that federal law applies to the allotment not state law in the same way the state law is exempted from military base concessions in Pierce County, Washington are exempted.  63.8.  That the state of Washington has no right to control or tax the buildings or the revenue generated by the buildings on the property now owned or controlled by the Estate of Edward Amos Comenout Jr.  63.9.  The Estate also seeks an injunction ordering dismissal of the seizure in July of 2008, now in the Washington State Court of Appeals, No. 47883-8-11 and the return of the property or fair market value.  63.10.  All parties move that the Court declare that commerce in industrial Hemp (Cannabis sativa L) with a concentration of not more than 0.3 percent of delta-9 tetrahydrocannabinol [THC] concentration and the commerce in marijuana now allowed in the state of Washington is legally allowed on the allotment when managed and operated by Plaintiffs Robert Reginald Comenout Sr. or Edward Amos Comenout III.

## SECOND CLAIM

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 63 as though fully set out here.

64.    Joshua M. Choate and Michael Pellicciotti are the Assistant Attorney Generals of the state of Washington that were assigned to prosecute Robert Reginald Comenout Sr., Robert Reginald Comenout Jr., Marlene Comenout and Lee A. Comenout in the courts of Pierce County in

July of 2015, and thereafter, for alleged violations of the Washington State cigarette tax law and related theft of state funds allegedly for state taxes collected but not remitted. The authority to assign Joshua Choate and Michael Pellicciotti was cited in the respective informations of "Pursuant to RCW 43.10.232." That statute at Wash.Rev.Code § 43.10.232(1)(a) only applies when the county prosecuting attorney has "jurisdiction in which the offense occurred." The county prosecutor has no jurisdiction to prosecute Indians in Indian Country. Indian Country includes the allotment, 18 U.S.C. § 1151(c). State law licenses do not extend to Indian Country. *In the Matter of Robertson,* 4 NICS.App. 111 (1996). *State v. Klindt,* 782 P.2d 401 (Okla. Cr. 1989), *Application of Carmen,* 48 Cal.2d 851, 313 P.2d 817 (Cal. 1957), *U.S. v. Stands,* 105 F.3d 1565 (8th Cir. 1997), *Solem v. Bartlett,* 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984), *Cravatt v. State,* 825 P.2d 277 (Okla. Cr. 1992), *Dickson v. Carmen,* 270 F.2d 809 (9th Cir. 1959), *Wesley v. Schneckloth,* 55 Wash.2d 90, 346 P.2d 658 (Wash. 1959), *U.S. v. Sands,* 968 F.2d 1058 (10th Cir. 1992), *Magnan v. Trammell,* 719 F.3d 1159 (10th Cir. 2013) and other cases all hold that the respective states involved cannot charge crimes against Indians on Indian allotments. The ABA Criminal Justice Section General Standard 3-1.2, functions of the prosecutor, states at (a), the office of prosecutor is charged with responsibility for prosecuting in its jurisdiction. No authority exists to obtain search warrants from a state court judge to search Indians on their

property on an allotment. *Ross v. Neff,* 905 F.2d 1349 (10th Cir. 1990); *United States v. Peltier,* 344 F.Supp.2d 539, 546 ( E.D. Mich. 2004). The state criminal statute, Wash.Rev.Code § 9.12.010, may apply. If the investigation and suit is unlicensed, the action is unenforceable. See e.g. *Del Webb Communities, Inc. v. Partington,* 652 F.3d 1145, 1152 (9th Cir. 2011). Therefore, all activities of Joshua Choate and Michael Pellicciotti involving the affected Plaintiffs are void and pleadings prepared by them and each be dismissed for want of representative authority to proceed to prosecute on activity within an Indian allotment.

### THIRD CLAIM

Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 64 as though fully set out here.

That the Court enjoin the Defendants or any one of them from any and all actions in the future in which the Court will determine to be preempted by federal law or enjoin the Defendants or any one of them or their employees or agents in concert with Defendants from enforcing the laws that the Court rules inapplicable to Plaintiffs.

Plaintiffs also seek their reasonable attorneys fees, costs and disbursements from the Defendants.

DATED this 10th day of June, 2016.


*s/ Robert E. Kovacevich*
ROBERT E. KOVACEVICH, #2723
Attorney for Plaintiffs

1

2
                              _s/ Aaron L. Lowe_
3                             AARON L. LOWE, #15120
                              Attorney for Plaintiffs
4

5                             _s/ Randal B. Brown_
                              RANDAL B. BROWN, #24181
6                             Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Preliminary and
Permanent Injunction, etc. - 52

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

Co-Plaintiff, Robert Reginald Comenout Sr., certifies under the penalties of perjury under the laws of the United States that he has read the foregoing Complaint and that it is true and correct except for paragraphs alleged upon information and belief which he believes are true and correct.

DATED this 7th day of June, 2016.

_____
ROBERT REGINALD COMENOUT, SR.

1    Co-Plaintiff, Edward Amos Comenout III, certifies under the penalties

2  of perjury under the laws of the United States that he has read the foregoing

3  Complaint and that it is true and correct except for paragraphs alleged

4
5  upon information and belief which he believes are true and correct.

6    DATED this 7th day of June, 2016.

7

8

9                                         EDWARD AMOS COMENOUT III

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Preliminary and
Permanent Injunction, etc. -  54

1      Co-Plaintiff, Robert Reginald Comenout Jr., certifies under the

2   penalties of perjury under the laws of the United States that he has read the

3   foregoing Complaint and that it is true and correct except for paragraphs

4   alleged upon information and belief which he believes are true and correct.

5

6      DATED this 7th day of June, 2016.

7

8

9                      ROBERT REGINALD COMENOUT JR.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Preliminary and
Permanent Injunction, etc. - 55

Co-Plaintiff, Marlene Comenout, certifies under the penalties of perjury under the laws of the United States that he has read the foregoing Complaint and that it is true and correct except for paragraphs alleged upon information and belief which he believes are true and correct.

DATED this 7th day of June, 2016.

MARLENE COMENOUT