# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| ROBERT REGINALD COMENOUT, SR. and EDWARD AMOS COMENOUT III,<br><br>Plaintiffs,<br>v.<br><br>REILLY PITTMAN, CYNTHIA KEIRSEY, ERIC BELIN, AL ANDERSON, KANDRA TINNERSET, and PAUL W. JOHNSON,<br><br>Defendants. | CASE NO. 3:16-cv-05464-RJB<br><br>ORDER ON DEFENDANT PAUL W. JOHNSON'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), AND (6) |

THIS MATTER comes before the Court on Defendant Paul W. Johnson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), and (6). Dkt. 103. The Court has considered the motion, Plaintiffs' Response (Dkt. 105), Defendant Johnson's Reply (Dkt. 108), the Fourth Amended Complaint (Dkt. 79), and the remainder of the file herein.

## I.    BACKGROUND

A.  The Complaint.

The Fourth Amended Complaint ("Complaint") is alleged by Plaintiff Robert Reginald Comenout Sr. and Plaintiff Edward Amos Comenout III, who are enrolled in the Tulalip Indian Tribe and Muckleshoot Tribe of Indians, respectively. Dkt. 79 at ¶4. The Complaint names as a defendant Paul W. Johnson, "in his official capacity in order to obtain a prospective injunction

ORDER ON DEFENDANT PAUL W. JOHNSON'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), AND (6) - 1

against licensing or taxing Plaintiffs." *Id*. at ¶21. It is alleged that Defendant Johnson is "the Program Manager of the Prorate and Fuel Tax Services of the Washington Department of Licensing (DOL) that has jurisdiction of licensing and taxing assessments." *Id*.

The Complaint alleges five claims, but it appears that only Claim Five pertains to Defendant Johnson. *See* Dkt. 79 at ¶¶22-37. Like the other claims, Claim Five builds upon the allegation that the defendants have restricted Plaintiffs' use of Public Domain Allotment 130-1027 ("the Allotment"), a plot of land that the Complaint alleges is Indian Country and not subject to State taxation. *See Id*. at ¶1-4. Claim Five alleges:

> Plaintiffs intend to import fuel shipped to the Allotment for use by Plaintiffs and/or eventual sale to retail customers. All safety and fuel storage rules will be observed.
>
> On May 26, 2017, Plaintiff Edward Amos Comenout III personally appeared at the Olympia office of Paul W. Johnson . . . seeking to obtain exemptions to allow a Yakama Nation member to transport motor fuel to the Allotment. He was denied and [*sic*] opportunity to obtain any exemption.
>
> Therefore, Plaintiffs request a ruling that Yakama Indian distribution of motor fuel from Oregon to the Allotment (1) for personal use of Plaintiffs and or [*sic*] (2) sale at retail may be accomplished without stoppage en route by the state agents or employees, the Department of Licensing, Department of Revenue or the State Liquor and Cannabis Board and without Washington State tax or licensing fees being assessed or collected.

Dkt. 79 at ¶37. The Prayer for Relief on Claim Five similarly seeks a declaration that Plaintiffs "may import motor fuel transported from Oregon on the Yakama Indian Reservation by Yakama Indian distributors," for both Plaintiffs' personal use and retail use on the Allotment, "without state interference, without obtaining motor fuel licenses and fee of any state motor vehicle gas tax." *Id.* at p.22 ¶5.

B. <u>Declaration of Plaintiff Robert R. Comenout, Sr.</u>

Plaintiffs' Response to Defendant Johnson's motion to dismiss incorporates a declaration by Plaintiff Robert R. Comenout, Sr. Dkt. 105-1. The Declaration gives an overview of the

history to the Allotment, including a personal narrative of "raids" by the State and local government of a convenience store on the property. According to the declaration, the Allotment has been raided of cigarettes, fireworks, and liquor and proceeds therefrom. *Id*.

C. Defendant Johnson's Motion to Dismiss.

Defendant Johnson brings his motion under Fed. R. Civ. P. 12(b)(1) and (6), raising four separate grounds for dismissal: (1) Plaintiffs lack Article III standing and their claims are not ripe; (2) the Tax Injunction Act, 28 U.S.C. §1341, bar Plaintiffs' claims; (3) the suit is barred by the Eleventh Amendment, because the claim against Defendant Johnson is really a claim against the State of Washington; and (4) principles of comity warrant dismissal. Dkt. 103.

## II. DISCUSSION

A. Standing and Ripeness.

Article III limits the judicial power of the United States to actual cases or controversies. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). The closely-related doctrines of standing and ripeness arise out of the Article III case or controversy requirement and are intended to "prevent courts from becoming enmeshed in abstract questions which have not concretely affected the parties." *Pacific Legal Foundation v. State Energy Resources,* 659 F.2d 903, 915 (9th Cir.1981). "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010).

Defendant Johnson has raised both standing and ripeness under Fed. R. Civ. P. 12(b)(1). Dkt. 103 at 4. In sum, Claim Five should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiffs lack standing and their claim is not ripe.

**1. Standing.**

Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication. *Chandler*, 598 F.3d at 1122 (citation omitted). To demonstrate constitutional standing, the plaintiff must prove (1) that he or she suffered an injury in fact; (2) the existence of a causal connection specifically traceable to the unconstitutional conduct of defendants; and (3) the likelihood that a favorable outcome will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To suffer an injury in fact, the harm alleged must be "actual or imminent, not conjectural or hypothetical." *Coral Const. Co. v. King County*, 941 F.2d 910, 929 (9th Cir. 1991) (internal quotations and citations omitted). "A very significant possibility of future harm" must be shown in cases, like here, "[w]here only injunctive or declaratory relief is sought." *Id*.

Here, Plaintiffs lack standing because there is no showing as to the first standing requirement, injury in fact. The harm alleged appears to flow from the theory that if Plaintiffs import motor fuel, they will be subjected to government interference, including State taxation. *See* Dkt. 79 at ¶37. This theory points to a future, not present harm, and thus cannot be an "actual" harm. There is also no showing of imminent harm, because nothing about the pleadings points to harm that is real and immediate. The Complaint alleges that Plaintiffs "intend to import fuel shipped to the Allotment," Dkt. 79 at ¶37, which, if true, establishes only that Plaintiffs aspire to do something at some point. The Complaint also alleges that Plaintiff Edward Amos Comenout III sought, but was denied, a meeting "seeking to obtain exemptions to allow a Yakama Nation member to transport motor fuel," but no further context is alleged to explain how an event centering on a third party from another tribe created a real and immediate risk of harm to Plaintiffs. Nor can Plaintiffs' standing rest on the legal rights or interests of that third party.

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Without more, the pleadings only point to the possibility that the State could interfere with Plaintiffs' motor fuel import.

Perhaps anticipating this result, Plaintiffs' Response includes a declaration by Plaintiff Robert R. Comenout Sr. narrating his personal experience with government "raids" of a convenience store on the Allotment over a series of decades. Dkt. 105-1. In Plaintiff Comenout Sr.'s view, although "[e]very document said we were within our rights and legal in all respects . . . [w]e would open for cigarette sales and be raided." *Id*. at 6. The Allotment also sustained raids for the sale of fireworks and liquor, according to the declaration. *Id*. While the declaration clearly illuminates Plaintiffs' perspective of the deteriorated relationship between Plaintiffs and State and local governments, the declaration is general and fails to further substantiate actual or imminent harm to Plaintiffs for Claim Five.

Claim Five should be dismissed because Plaintiffs lack standing.

**2. Ripeness.**

Ripeness, which is a doctrine related to standing, is a means for federal courts to dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur. *Chandler*, 598 F.3d at 1122 (citation omitted). The doctrine draws both from constitutional and prudential concerns. *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). The constitutional component considers whether there exists a case or controversy, such that "the issues presented are definite and concrete, not hypothetical or abstract," which is another way of saying that the plaintiff "face[s] a realistic danger of sustaining a direct injury," not a speculative or imaginary one. *Id*. When considering the prudential component, courts consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 1141.

Beginning with the constitutional component, Plaintiffs have not shown an actual case or controversy. In Plaintiffs' view, if the relief sought is not granted, Plaintiffs will sustain harm from State interference with Plaintiffs' motor fuel import by the allegedly unlawful enforcement of State tax laws. When evaluating whether the enforcement of a proscriptive statute satisfies the case or controversy requirement, courts consider (1) whether the plaintiffs have articulated a concrete plain to violate the law in question, (2) whether the government has communicated a specific warning or threat to enforce the law, and (3) the history of past enforcement. *Thomas*, 220 F.3d at 1139. Applied here: (1) Plaintiffs have alleged only the bare intent, not a concrete plan, to import fuel; (2) the State referred to a "parade of horribles" to follow if State fuel taxes were not imposed against tribes, but this comment was general and not directed to Plaintiffs, and the comment preceded an important Washington State Supreme Court ruling, *see Cougar Den, Inc. v. Wash. State Dep't of Licensing*, 188 Wn.2d 55 (2017); and (3) Plaintiffs have made no showing of past enforcement, especially since *Cougar Den*.

Analyzing the prudential component, Plaintiffs have not shown that the issue of whether fuel may be imported to the Allotment free from government interference is an issue fit for judicial decision. "Fitness" looks to whether the case presents "a concrete factual situation," versus a purely legal one. *Thomas*, 220 F.3d at 1141. The showing made here is hypothetical, not concrete. The pleadings do not allege, for example, that Plaintiffs have purchased motor fuel to be delivered to the Allotment on a date certain, or even that they have entered formal talks with a fuel distributor uncertain how to conduct business on the Allotment. Plaintiffs have also not made a showing of hardship, for example, by alleging that their convenience store purchased motor fuel pump equipment but cannot import motor fuel.

Plaintiffs analogize this case to *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144 (9th Cir. 2017). Dkt. 105 at 11. In *Bishop*, a tribe sought declaratory relief confirming the tribal police's authority to investigate violations of tribal, state, and federal law, and to detain and transport non-Indian violators on tribal property. The Ninth Circuit found both constitutional and prudential ripeness and noted "multiple hardships" on the tribe, including, *inter alia*, the county's ongoing criminal prosecution of a tribal police officer and threats of the same to others, as well as *Id.* at 1153-54. *Bishop* is handily distinguished, because in this case, Plaintiffs seek an advisory opinion about the enforcement of State fuel tax laws on a potential decision to import motor fuel, whereas in *Bishop*, at least one tribal member was actually a subject of criminal prosecution by the State.

Having considered both the constitutional and prudential components to ripeness, Claim Five should be dismissed because Plaintiffs have not shown a ripe case or controversy.

Because dismissal of Claim Five is warranted on standing and ripeness grounds, Defendant Johnson's motion to dismiss under Fed. R. Civ. P. 12(b)(1) should be granted.

B. <u>Other grounds for dismissal.</u>

Because dismissal of Claim Five should be dismissed on justiciability grounds, the Court declines to reach other grounds for dismissal raised by Defendant Johnson. To that extent, Defendant Johnson's motion should be denied.

Parenthetically, it has not gone unnoticed that this claim originates from a series of events in May of 2017, a date after the March 16, 2017 issuance of *Cougar Den*. This case was first filed in June of 2016, and the initial complaint did not name DOL as a defendant and made no mention of transporting fuel. The Court's efforts to give Plaintiffs the opportunity to plead a

cognizable claim should not be interpreted as a general platform for Plaintiffs to grieve their issues with the State of Washington.

* * *

THEREFORE, Defendant Paul W. Johnson's Motion to Dismiss Pursuant to FRCP 12(b)(1), and (6) (Dkt. 103) is GRANTED IN PART as to Claim Five under Fed. R. Civ. P. 12(b)(1). The motion is otherwise denied. Claim Five is dismissed as to Defendant Paul W. Johnson, as well as any other defendants intended to have been named in the claim. This Order makes no findings as to any other claims.

It appearing that Defendant Paul W. Johnson is not named in any other claim other than Claim Five, Defendant Paul W. Johnson is HEREBY DISMISSED from this action.

IT IS SO ORDERED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 14th day of December, 2017.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge